Dear Mayor Porter:
You have asked us for our legal opinion as to whether R.S. 39:367
applies to State Planning and Development Districts as recognized and provided for in R.S. 33:140.61-140.62.
R.S. 39:367 reads, in pertinent part,
"§ 367. Policy formulation
 "A. (1) The division of administration shall establish a uniform policy for adoption and implementation by all state agencies, except for those agencies under the control of a statewide elected official, for handling claims of unreasonable competition.
 "(2) Each statewide elected official shall establish a uniform policy for adoption and implementation by all agencies under his control for handling claims of unreasonable competition.
 "B. The policy shall include guidelines by which state agencies can address complaints when lodged by a businessman operating a privately owned business located in the state who has cause to believe that an activity engaged in by a state agency provides unreasonable competition with his business. However, no business which was established for the purpose of providing services or goods required by the state shall be eligible to file complaints under the provisions of this Part, nor shall any business which was established through a state economic development assistance program be eligible to file complaints under the provisions of this Part.
 "C. The policy shall acknowledge that, while state agencies have a mandated responsibility to perform those services required by law, the state shall not unduly interfere with the private sector.
 "D. In developing the policy and guidelines, the following should be considered or included:
* * *"
R.S. 33:140.61-140.62 read, in pertinent part, as follows:
"§ 140.61. Purpose
 "The legislature finds that problems of growth and development in urban and rural regions of the state so transcend the boundary lines of local government units that no single unit can plan for their solution without affecting other units in the region; that various multi-parish planning activities conducted under various laws of the United States are being conducted in an uncoordinated manner; that intergovernmental cooperation on a regional basis is an effective means of pooling the resources of local government to approach common problems; and that the assistance of the state is needed to make the most effective use of local, state, federal, and private programs in serving the citizens of such urban and rural regions.
 "It is the purpose of this Subpart to facilitate intergovernmental cooperation and to insure the orderly and harmonious coordination of state, federal, and local comprehensive planning and development programs for the solutions and resolution of economic, social, physical, and governmental problems of the state and its citizens by providing for the creation and recognition of regional planning and development commissions.
"§ 140.62. Designation of regions
 "A. The development districts for the state designated and established by the governor in Executive Order No. 27 of 1973 are hereby continued as follows:
 "(1) District #1, composed of the parishes of Jefferson, Orleans, Plaquemines, St. Bernard and St. Tammany.
 "(2) District #2, composed of the parishes of Ascension, East Baton Rouge, East Feliciana, Iberville, Livingston, Pointe Coupee, Tangipahoa, Washington, West Baton Rouge, West Feliciana and St. Helena.
* * *
[and so on similarly to include every parish and area of the state]"
It is our statutory interpretation and opinion, based on the plain statutory language thereof, that R.S. 39:367 only applies to state agencies, not to political subdivisions. A state agency is generally considered to be within the Executive Branch of state government as explained by La. Const. (1974) art. IV, § 1, or at least at the level of state government. A political subdivision, on the other hand, includes special districts, as these planning and development districts are. See, for example, La. Const. (1974) art. VI, § 44(2). As stated by the legislation above, the main purposes of these particular districts are to facilitate intergovernmental cooperation, especially among local governmental subdivisions, and to insure coordination among them to resolve problems regarding planning, growth, and development. We think that they are political subdivisions, not state agencies, and that R.S. 39:367 does not apply to them.
Moreover, you indicated in your request that certain privately owned businesses which engage in the work of performing certain grant-writing, planning, and other consulting services for governments have complained that one of these districts also sometimes offers to perform the same services. R.S. 39:367 says, in pertinent part, "[N]o business which was established for the purpose of providing services or goods required by the state shall be eligible to file complaints under the provisions of this Part."
In addition, you question what is meant by "unduly interfere" and "unreasonable competition," as those terms are used in R.S. 39:367, in relation to the federal government's Housing and Urban Development (HUD) policy of requiring that certain procurement procedures be followed when the town wishes to contract with privately owned businesses in connection with a HUD program but not when the town wishes to contract with one of these particular districts as a matter of intergovernmental agreement. You indicate that the privately owned businesses have complained that such a differentiation in treatment amounts to "undue interference" and "unreasonable competition" with their business. If the distinction is based upon policy formulated by the federal government and HUD pursuant to federal law, it is "the supreme law of the land," U.S. Const. art. VI, and unless a federal court holds that the policy violates fundamental rights pursuant to the U.S. Constitution, which it does not appear to do, it cannot be held by state authorities to constitute "undue interference" or "unreasonable competition."
With kindest regards, we remain
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By __________________________________ THOMAS S. HALLIGAN Assistant Attorney General
DATE RELEASED: August 25, 2003